STATE OF NEBRASKA, PLAINTIFF IN ERROR, v. GUY EDWIN McCOY, DEFENDANT IN ERROR.

18 N. W. 2d 101

FILED MARCH 23, 1945. No. 31904.

*Kelso Morgan* and *C. E. Walsh,* for plaintiff in error.

*Joseph M. Lovely* and *Edward T. Hayes, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

PAINE, J.

The county attorney for Douglas county filed a petition in error to review an adverse ruling in the district court on a motion to quash the information which he had filed against the defendant.

On June 9, 1944, a state complaint was filed in the criminal branch of the municipal court in Omaha, charging Guy Edwin McCoy with receiving a stolen automobile, and thereupon the defendant was bound over to the district court by the judge of the municipal court under bond of $2,500.

On June 13, 1944, Kelso Morgan as county attorney filed an information in the district court, charging the defendant in error with the crime of receiving a stolen automobile. A copy thereof was served on the defendant in error on June 16. Thereafter, on July 31, while the said defendant was held in custody, a motion to quash said information was filed for the said defendant by Joseph M. Lovely, public defender for Douglas county, and Edward T. Hayes, his assistant, as attorneys for the defendant.

This motion to quash set out that there were three defects appearing on the face of the record, which may be concisely stated as follows: (1) Because exclusive jurisdiction over all persons under the age of eighteen years is given to the juvenile court of the district court for Douglas county, Nebraska; (2) that no concurrent jurisdiction is conferred upon the criminal division of the district court over persons under the age of eighteen years; (3) that the defendant is improperly charged because the procedure against any person under the age of eighteen years must be by a petition rather than by information under the laws of Nebraska.

A hearing was held June 13, 1944. The bill of exceptions discloses that the county attorney first objected to the case being transferred to the juvenile court. Objection was overruled by the court on the ground that the case was not being transferred to the juvenile court, but that the judge of the juvenile court was sitting as a district judge in the

district court. The county attorney then requested that the prisoner be present at the presentation of the case. "THE COURT: I do not think it necessary for the prisoner to be here at all, if you will just make your record here." Thereupon, Mr. Hayes, the assistant public defender, asked the county attorney to stipulate that the defendant charged with receiving a stolen automobile was over sixteen years and under eighteen years of age. The county attorney again requested that the boy should be present during the hearing, and objected to the court taking jurisdiction in the matter (1) because the juvenile court has no jurisdiction where an information has been filed in a criminal case; (2) because the act creating and giving authority to the juvenile court is unconstitutional and the Act has been declared partly void; (3) because the Act has not been reenacted after it was declared void; and (4) because the statutes of Nebraska take away from the juvenile court any authority to sentence to the industrial school, reformatory or penitentiary any child or person over sixteen years of age, and limits the juvenile court to sentence under sixteen years of age unless one over sixteen and under eighteen has pleaded guilty or been convicted of a crime. Such motion was overruled by the court for the reason that the presiding judge had transferred this case to Judge Herbert Rhoades, the duly appointed judge of the juvenile court division of the district court for Douglas county, and that the court in hearing the motion to quash is sitting as a criminal judge of the district court for Douglas county, and not as a juvenile judge.

The county attorney was again asked to stipulate as to the age of the defendant, and agreed to stipulate if the defendant was present in court. The court said that the defendant might be put on the stand for that one purpose and no other. Thereupon the defendant was sworn, stated his name was Guy Edwin McCoy, and he resided at 7919 Cass street, and that he was 17 years of age December 25, 1943.

It was then stipulated that the defendant was committed to the Kearney Industrial School by Judge Rhoades, of the

juvenile court, on October 5, 1943, and ran away from that school on May 29, 1944; that he was arrested June 2, 1944, in Omaha, and has been held since said date in the Douglas county jail, in the adult division of that jail, and is unable to raise the bond, and that jury term would not be held until October 16, 1944.

The matter was thereupon continued from June 13 to August 8, 1944, at which time it was stipulated that no petition had been filed in the juvenile court charging the defendant with delinquency, and it was further stipulated that no investigation had been made by the juvenile court of the case.

The arguments having been made, the court thereupon orally dictated his decision of five pages to the court reporter, and the same appears in the bill of exceptions, the conclusion being:

"In the judgment of this court, the filing of the information against the boy McCoy, is without authority of law, for the reason that the said statutes of the state have not been complied with and the complaint is, therefore, without force and effect.

"The motion to quash is sustained; the information is dismissed. The proper juvenile authorities are hereby ordered to file the proper petition against the boy. That the proper investigation shall be made as required by law, and for such other and necessary proceedings as provided for by law, shall be complied with."

In the petition in error, ten grounds are set out as prejudicial errors justifying a reversal of the order sustaining the motion to quash and dismissing the case. Said errors may be epitomized as follows: That the district court by sustaining the motion found that the exclusive jurisdiction over all persons under the age of eighteen years for the commission of a criminal offense is given to the juvenile court for Douglas county, Nebraska, which is contrary to the law; that by so sustaining the motion to quash, the court held that all persons under the age of eighteen years who are alleged to have committed a crime cannot be tried in the

criminal division of the district court for Douglas county, and that the only procedure to punish a person under the age of eighteen years for the alleged commission of a criminal offense must be by a petition, rather than by complaint and information, which is contrary to law, thereby holding that a person under eighteen years of age is not subject to the criminal laws of the state of Nebraska; that the court, over the objection of the county attorney, dismissed the cause of action and sustained the motion to quash the information, whereas said court has no jurisdiction to dismiss a criminal case except where trial is had, or upon motion of the county attorney; and charged lastly that the judicial department thereby exercised the prerogative of the executive department of the government of the state of Nebraska, in violation of the laws thereof.

Serious differences have thus arisen between the county attorney of Douglas county and the judge of the juvenile court in Omaha as to the proper proceedings in handling a youth under the age of eighteen years who has allegedly committed a crime.

It being necessary to examine our laws relating to this matter, we find that the first reference is in the Constitution of 1875, under article VIII, on the subject "Education". Section 12 thereof provides: "The legislature may provide by law for the establishment of a school or schools for the safe keeping, education, employment and reformation of all children under the age of sixteen years, who for want of proper parental care, or other cause, are growing up in mendicancy, or crime."

The first act of the legislature in reference thereto is found in an Act to locate a state reform school for juvenile offenders, beginning on page 413, Laws 1879. Section 6 is entitled "Juvenile convicts," and reads:

"Sec. 6. When a boy or girl under the age of sixteen years, shall, in any court of record in this state, be found guilty of any crime except murder or manslaughter, the court may, if in its opinion the accused is a proper subject therefor, instead of entering judgment, cause an order to be

entered that said boy or girl be sent to the state reform school in pursuance to the provisions of this act; and a copy of said order, duly certified by the clerk, under seal of said court, shall be a sufficient warrant for carrying said boy or girl to the school, and for his or her commitment to the custody of the superintendent thereof."

The following sections provide that, when such a youth shall be convicted, in an inferior court, of being a disorderly person, the whole matter shall be sent to a court of record, and direct what proceedings shall take place before commitment to the reform school, where such youth shall remain until he is reformed, or reaches his majority.

This Act was incorporated in the Compiled Statutes of 1881, and in subsequent editions of the Compiled Statutes, as chapter 75.

In 1887, chapter 75, Compiled Statutes, was entirely repealed and a new Act substituted in lieu thereof, which was substantially a reenactment of the former Act, Laws 1887, ch. 74, p. 589, except that the age is raised to eighteen years in the opening part of the section, which reads as follows:

"Sec. 5. When a boy or girl of sane mind under the age of eighteen years shall, in any court of record in this state, be found guilty of any crime except murder or manslaughter, committed under the age of sixteen years, or who for want of proper parental care is growing up in mendicancy and vagrancy, or is incorrigible and complaint thereof is made and properly sustained, the court may, if in its opinion the accused is a proper subject therefor, instead of entering judgment, cause and order to be entered that said boy or girl be sent to the State industrial school in pursuance of the provisions of this act, * * * ."

In 1897, section 5 of the Act of 1887 was amended. Laws 1897, ch. 59, p. 305. The only change made by this Act with reference to age was in the opening part of the section, and the part changed is underlined in the quotation which follows:

"Section 5. When a boy or girl of sane mind under the age of eighteen years shall, in any court of record in this

state, be found guilty of any crime, except murder or manslaughter, committed under the age of *eighteen* years, * * * ."

In *Scott v. Flowers*, 60 Neb. 675, 84 N. W. 81, in an opinion rendered on November 8, 1900, the court held section 5 of chapter 75 unconstitutional and void, because it permitted the commitment to the industrial school of children over the age of sixteen years, while the Constitution inhibited the legislature from providing for the commitment to the industrial schools of children of any class, either of an incorrigible nature or criminals in fact, if beyond the age of sixteen years.

As a result of this opinion, the legislature on March 29, 1901, amended and reenacted chapter 75, Comp. St. 1899, changing section 5 back to sixteen years of age. Laws 1901, ch. 51, p. 404.

In the rehearing of *Scott v. Flowers*, 61 Neb. 620, 85 N. W. 857, decided April 10, 1901, the court reversed its former holding and held that section 5 of chapter 75 was only unconstitutional in authorizing the commitment of children over the age of sixteen years, and that it "is valid and enforceable to the extent that it authorizes commitment to the state industrial school of children under the age of sixteen years who, for want of proper parental care, are growing up in mendicancy or crime."

By an error the Compiled Statutes of 1901 still carried the age in section 5 at eighteen years in the opening sentence, although it had been changed that same year by the legislature.

In 1903 the legislature amended this section to read as follows: "Section 5. When a boy of sane mind under the age of eighteen years shall in any court of record in this state, be found guilty of any crime, except murder or manslaughter, or who * * * is growing up in mendicancy or crime and complaint is made therefore and properly sustained, the court may, * * * cause an order to be entered that said boy be committed to the State Industrial School, * * * ." Laws 1903, ch. 69, p. 369.

In 1920 the Constitution provided in section 12, art. VII, that the legislature may provide for school or schools for safekeeping and reformation of children under the age of eighteen years.

This briefly presents the provisions of our Constitution and statutes relating to the commitment of youth to the State Industrial School. In connection therewith, we must also consider the State Reformatory Act, which provides generally in section 83-455, R. S. 1943, that any person not less than sixteen nor more than thirty years of age, when convicted of a first felony, may be sentenced to the State Reformatory.

It now becomes necessary to examine the laws relating to the Juvenile Court Act, which was first enacted as Laws 1905, ch. 59, p. 305, and consisted of 20 sections. In section 1, the age of children subject to the terms of the act was prescribed as "under the age of sixteen (16) years," but sections 1, 6, 7 and 9 of the Juvenile Court Act were amended in 1907 (Laws 1907, ch. 45, p. 185), and the age of dependent, delinquent and neglected children which were subject to the act generally was raised to eighteen years (R. S. 1943, sec. 43-201).

In 1911 sections 7 and 9 of the Juvenile Court Act were again amended. Laws 1911, ch. 41, p. 207. The age at which children could be committed to the Industrial School was amended to read "or, if under the age of sixteen (16) years, or if he pleads guilty to or is convicted of any crime, to the care of the state industrial school."

The original jurisdiction over juvenile courts is lodged in the district courts, and in the judges thereof in vacation. The county court has concurrent jurisdiction, but in counties with a population of over 50,000 such jurisdiction shall not be exercised by the county court except in the absence of the district judge or judges from the county. It is further provided in section 43-202, R. S. 1943, that in all trials where the delinquent child is charged with a crime, any interested person, or the judge on his own motion, may order a jury to try the case. In cities having a population of

40,000 and upward, the police judge thereof shall have jurisdiction under this act, concurrent with the county judge, within the limit of such city.

In counties having a population of over 50,000, the judges of the district court shall select one of their number to preside over what is termed the juvenile court, which judge serves during his term, unless the judges choose another of their number to act. Such judge of the district court thereupon gives precedence in his work as district judge to the cases which arise under the juvenile court act, and hears such other cases as may be assigned to him. R. S. 1943, sec. 43-204.

Any reputable person of the county, who knows of a dependent, neglected, or delinquent child, may file a complaint with the clerk of the court, whereupon a summons shall issue to the person to appear with such child within 24 hours, and the court shall hear and dispose of the case. R. S. 1943, secs. 43-205 and 43-206.

It is also provided that, if any child under the age of eighteen years shall be found to be delinquent, dependent, or neglected within the meaning of the act, he may, if under the age of sixteen years, or if he pleads guilty to or is convicted of a crime, be committed to the care of the State Industrial School. R. S. 1943, sec. 43-208.

It has been contended that the Juvenile Court Act, in case of conflict, governs over the industrial school laws. However, in section 43-217, R. S. 1943, the contrary is clearly stated, "and in all commitments to said institutions the acts in reference thereto shall govern the same." See *Cohen v. Clark,* 107 Neb. 849, 187 N. W. 120.

In connection with the Industrial School Act and the Juvenile Court Act, we find that in 1921 the legislature enacted the State Reformatory Act. Laws 1921, ch. 208, p. 741. Section 4 of this act provided: "Any person not less than sixteen nor more than thirty years of age at the time of conviction of a felony for the first time may be sentenced to confinement in said reformatory instead of to the penitentiary, when in the judgment of the court said person is ca-

pable of reformation and said sentence is compatible with the general welfare." (R. S. 1943, sec. 83-455.)

Then the legislature, in addition to the other laws relating to minors herein discussed, enacted another bearing directly upon the question before us, and that is section 43-222, R. S. 1943, reading as follows: "All minors under eighteen years of age, who, in the judgment of the juvenile court, are delinquent, dependent, defective or neglected and require state institutional care and custody shall be wards of the state, and shall be committed to the care and custody of the Board of Control, which board thereupon becomes vested with the sole and exclusive custody of such minors."

The case at bar has raised some questions for the first time in this court, and the first one is, Does the judge of a juvenile court in Nebraska have sole and exclusive jurisdiction over the trial of youth under the age of eighteen years to the extent that he can direct whether a petition, complaint, or information shall be filed against such defendant?

In the brief filed by the public defender for the defendant it is said that "Juvenile delinquency is a general word, like 'crime,' and embraces everything from murder to truancy from school and the legislature has power to provide that an act committed by an infant shall not be a crime and to classify persons by their age for the purpose of dealing with them as delinquent persons"—citing 31 Am. Jur., sec. 16, p. 791, authority for which is based upon the case of *Ex parte Mei*, 110 A. L. R. 1080 (122 N. J. Eq. 125, 192 Atl. 80), in which it was held:

"2. A person under the age of sixteen years may not be loosely charged with 'juvenile delinquency;' he must be charged with the specific offense which, if he did it, makes him a juvenile delinquent.

"3. A commitment of a person fifteen years and four months of age at the time of the alleged crime, issued by the Hudson Oyer and Terminer, pursuant to an indictment for murder found by the grand jury, held to be valid."

" * * * it is not the purpose of the statutes creating juvenile courts to provide additional courts for the punish-

ment of crime. The purpose is to establish special tribunals having jurisdiction, within prescribed limits, of cases relating to the moral, physical, and mental well-being of children to the end that they may be directed away from paths of crime." 31 Am. Jur., sec. 26, p. 796.

"While * * * the powers conferred by statute upon a juvenile court have been liberally construed * * * the courts in the more recent cases have manifested a distinct tendency to confine the jurisdiction of the juvenile courts within the limitations imposed by statute, namely, to cases involving neglected or delinquent minors, and not to encroach upon the jurisdiction in respect to minors theretofore existing in courts of general jurisdiction." Annotation, 78 A. L. R. 317. See, also, 31 Am. Jur., sec. 29, p. 798.

It was held in *Johnson v. State*, 43 Ga. App. 474, 159 S. E. 295, that the Juvenile Court Act did not deprive the superior court of a county where that act was applicable of its jurisdiction to try a defendant indicted for a felony, although the defendant may have been less than sixteen years of age at the time of the alleged commission of the crime.

The Juvenile Court Act of Nebraska "makes no provision for a trial by jury except where a delinquent child is charged with a crime." *Laurie v. State*, 108 Neb. 239, 188 N. W. 110.

Now, if we are to arrive at an answer to the question propounded, we must ascertain the duty of the county attorney under our law.

"It shall be the duty of the county attorney, when in possession of sufficient evidence to warrant the belief that a person is guilty and can be convicted of a felony or misdemeanor, to prepare, sign, verify, and file the proper complaint against such person, and to appear in the several courts of his county and prosecute the appropriate criminal proceeding on behalf of the state and county." R. S. 1943, sec. 23-1201.

In an endeavor to learn and carry out the meaning of the legislature, we reach the conclusion that the judge of the juvenile court does not have the sole or exclusive jurisdic-

tion of youth under eighteen years of age; that the county attorney is not limited by the Juvenile Court Act in any way in his duty to file the proper complaints against wrongdoers and prosecute the same.

However, in this respect we have not overlooked section 43-211, R. S. 1943, wherein it is provided that, where a juvenile court is held, as provided in section 43-204, R. S. 1943, if a child under the age of sixteen years is arrested, with or without a warrant, and taken before a justice of the peace, or public or police magistrate, such case shall be transferred to the juvenile court.

It thus clearly appears that there is a concurrent jurisdiction between these several courts. While we are inclined to the view that the juvenile court of each county in the state has a broad discretion in the handling of all cases involving dependent, neglected and delinquent minors, however, other courts also have concurrent jurisdiction under the general criminal laws of our state, and complaints can properly be brought before all such courts by the county attorney.

Holding these views, we find that the trial court was in error in sustaining the motion to quash the information filed by the county attorney, charging the defendant, who was under eighteen years of age, with receiving a stolen automobile, and the exceptions of the county attorney are sustained under section 29-2316, R. S. 1943.

EXCEPTIONS SUSTAINED.